Smith, C. J.,
after stating the pleadings, delivered the opinion of the Court.
By these pleadings it is admitted that the defendants were *65 selectmen; that they made a list of taxes, and delivered it to the collector, which was not signed by them; and that in the list the lands of non-residents were not assessed either in the names of the then owners or original proprietor ; that forty acres sold by the collector to a person under whom the plaintiff claims has been, through the insufficiency of the list, recovered from the plaintiff in a suit at law.
Are the defaults and malfeasances thus described any cause of action against selectmen, and is the plaintiff so situated that he can maintain the action ?
It is not sufficient to state generally that the defendants were guilty of neglect of duty or malfeasance in office, that the list was insufficient, &c. The particular defect must be pointed out. 2 Ld. Raym. 948. Therefore the allegation, that the list was in many other respects wholly imperfect and insufficient, is of no avail; as it is not well pleaded, it is not confessed by the demurrer. These defects must also be such as to vitiate the title. Here it is stated that the title failed on account of the defects in the list, but whether the defects particularly specified, or others, is not alleged. Perhaps this part of the declaration is not material. It is not easy to see how it could be traversed or proved. Perhaps the action may as well lie before as after the trial of the title. Certainly the present defendants are not to be affected by a judgment where they were not parties to the suit.
It is not stated in this declaration that the defendants have practised any fraud, that they have acted maliciously, or that they have been guilty of wilful neglect. They would doubtless be answerable, if either of these things were stated and proved against them. But, inasmuch as they are not stated, we are not to presume that they exist. In this case we are at liberty to indulge the charitable spirit of the law, and presume that the defendants, if they erred, erred through ignorance, inattention, or mistake, not from design. Even this error is, in many cases, sufficient to charge persons with the consequences of their doings or omissions, — as in the case of persons receiving a reward for their services; persons clothed with a *66 trust; sheriffs, and ministerial officers generally. But is it sufficient to charge the. present defendants ?
Before we attempt an answer to this question, we will first consider whether the instances of default or malfeasance specified are really such.
I. In omitting to sign the lists.
The act of June 12, 1784, folio ed. 324, is silent on the subject of signing the list or assessment.(a) It says, the lands shall be assessed so and so ; that the assessment shall be delivered to the collector; that a copy of the list attested by the selectmen shall be forwarded to the receiver at Exeter, &c. It is well known that in many cases the practice was for the selectmen to annex the list to the warrant, or the warrant to the list, and to refer to it in such a manner as to make both but one instrument; the warrant was signed, and that answered for both. And the reason for requiring the selectmen to attest the copy of the list forwarded to the receiver at Exeter probably was because the original was not signed by them. It -was probably thought improper that the collector should certify an extract or part only.
The act of Feb. 8, 1791, ed. 1797, 196, 197, expressly requires that the selectmen shall make lists under their hands, and commit the same to the collector, with a warrant under their hands and seals in due form of law. These lists must be signed, because they, and not the warrants, are to be recorded in the town-book. But this act was made after the transaction now under consideration, and therefore does not apply.
It is true the acts of May 2, 1719, Prov. Law, 138, and 12 Geo. II. c. 112, p. 172, require the lists or rates and assessments to be under the hands of the selectmen and assessors, to be committed to the constable to collect, with a warrant thereupon, to be signed by the selectmen, or town-clerk by their order. These acts do not refer to lists of taxes on the lands of non-residents, which were not taxed till 1777; and the method of assessing as well as collecting taxes on this species of prop *67 erty seems to be wholly contained in the acts of that and the subsequent years.
But, if it should be thought that in 1787 and 1788 the lists must be under the hands of the selectmen, is not their signature to the warrant accompanying the list sufficient ?[1]
In Harper v. Meloon, in error, Strafford, February Term, 1808, 8 Manuscript Reports, 115, it was determined that, under the act of June 21, 1797, ed. 1797, 496, which required the party making the demand to be submitted to make out a particular statement thereof, under his hand, in writing, and to lodge the same with the justice, &c., it was a sufficient signing if the demand was included in the body of the submission which was signed, as the act required, by both parties.[2] So in the case of wills, though the act requires signing, it is held that if the will be written by the testator, it is sufficient.
II. With regard to the second defect stated, — namely, that the non-resident lands were neither assessed to the present owner nor to the original proprietor, — the duty of the selectmen seems to be of a judicial nature. Who is the present owner of a particular piece of land, and who was the original proprietor, are questions about which courts of law are daily employed. Would it not be thought unreasonable that courts should be answerable for their decisions? The same question is differently decided at different Terms. This part of the statute must have a reasonable construction put upon it. 1 Rob. Adm. 221. On the one hand, we must not weaken the effect of the law on this subject by too great tenderness to particular hardships : but cases of unavoidable accident, invincible necessity, or the like, — cases where the party could not act otherwise than he did, or has acted at least for the best,— must be considered in all laws. All statutes must bo subject to considerations of rational equity. Laws which would not admit of this, which would not admit of the exercise of a fail-discretion under difficulties, would do more hurt than good; they would not be framed for human societies. With these rules of interpretation for our guide, — and they are conceived *68 to be legal ones, — what is the meaning of the clause in our statute which makes it the duty of the selectmen to assess nonresident lands to the present owner, if known; if not, to the original proprietor? The meaning is only that the selectmen shall use their best endeavors to ascertain the one and the other. To say that they are bound at all events to judge right would lead to the greatest injustice. Suppose the selectmen to witness a conveyance from a person considered as owner, — for twenty years in possession, no claim of title by any other person, — and the same day assess him [the grantee?] as present owner. It might turn out that the seller was not the proprietor. This deed may be adjudged fraudulent as against creditors. It is requiring an impossibility, to require absolute certainty in a case like this. It is not necessary. The only use in naming the owner — for the tax is on the land — is to give notice; and to name the reputed owner is even better than to name the true owner in some cases. With respect to the other alternative, that of taxing to the original proprietor, the difficulty is the same in kind, though not so great in degree. Suppose mistake in copy of charter. Suppose a case which has often occurred, — two grants. Are the selectmen bound to decide which is good in law?
The legislature were aware of the difficulty, and have since endeavored to apply a remedy, (a)
In discharging this part of their duty, as every other, selectmen [are] not [bound] to judge right at all events, but to act according to their best discretion. It does not appear in this case that they have acted otherwise. If there is any possible case where neither the names of the present owner and the original proprietor could not [?J be known, we are at liberty to presume this was such a case ;[1] and all the selectmen could do *69 was to give such description of the land taxed as it was usually known by. If the defendants are answerable in this case, then selectmen are liable for every mistake ox error in judgment they may commit in the execution of their office. If this be the case, I say with Mr. Justice Powell, in Ashby v. White, it will bo dangerous to undertake an office of this nature. It will effectually deter men from executing public offices, and especially this necessary one. Ashby v. White, 2 Ld. Raym. 949 ; 3 Ld. Raym. 823 ; Co. Litt. 81 b, n. 2.
In the case just referred to (Ashby v. White), which was for refusing the plaintiff’s vote for members’of Parliament, the declaration stated that the defendants, constables of the borough and presiding officers at the election for members of Parliament, well knowing the plaintiff’s right to vote, but contriving fraudulently and maliciously, intending to hinder and deprive him of his privilege, did hinder and obstruct, &c.
In Harman v. Tappenden, 1 East, 555, it was determined that an action does not lie against individuals for acts erroneously done by them in a corporate capacity, from which detriment happens to the plaintiff, — at least not without proof of malice. The action was against officers and members of a corporation for disfranchising the plaintiff, whereby he lost certain profits of his office, &e. [It was held that] no action lies against a corporator for mere mistake or error in judgment. Here was no malice. Wilfully and maliciously disfranchising may perhaps be sufficient ground of action.
Drewe v. Coulton, Mayor of Saltash, for wrongfully hindering the plaintiff from voting for member of Parliament. 1 East, 563, n. It must be charged substantially that defendant acted maliciously; acting wrong knowingly is equivalent. In Ashby v. White, the House of Lords held there was implied malice, which was sufficient. Justice Bulleb, N. P. 64, lays it down thus, that an action lies for a wilful misbehavior in a ministerial officer, by which a party is damnified, — “wilful” means, according to Mr. Justice Wilson, contrary to a man’s own conviction.
Where an officer is compellable to act, there are few cases where he is liable where he acts according to the best of his *70 judgment. It is otherwise where the officer has an option whether he will act or not. A revenue officer is a mere volunteer ; therefore liable for mistakes. But it is otherwise with magistrates, (a)
The principle upon which it is attempted to found the present action is, that every person undertaking any office is bound to discharge its duties with integrity, diligence, and skill. 3 Blackst. 165. (b)
All men in office are answerable, but in different degrees. Some ministerial officers acting for fees or reward are answerable for the smallest neglect, and, in some cases, for a mere mistake ; as sheriffs, registers of deeds, revenue officers, &c. Some — and this is the case wherever the office is judicial, or of a judicial nature — are only answerable for fraud, acts proceeding from an evil design.
Ministerial officers, and others, perhaps, are liable for their acts, where they are guilty of excess of jurisdiction. 4 T. R. 796.
The office of selectmen seems to be partly ministerial and partly of a judicial nature. It is compulsory. [N. H. Laws], ed. 1805, 196, 197. It can scarcely be said that they act for fees or reward. They are therefore liable only for wilful misbehavior ; for fraudulent and malicious acts; and perhaps, as it respects the town, for gross negligence, — not for mistakes or mere error in judgment; not for ignorance. Others undertake to judge of their knowledge and .qualifications. They are only to do the best they can.[1]
*71 This is the first action of the kind that is recollected to have been brought in this State; and jet, if it lies, the occasions for bringing it have been many. The errors of selectmen have been many. Individuals and the public have been injured thereby. We have no authorities, no decided cases to guide us. This is not conclusive against the action, but it ought to lead us to be cautious how we tread where there are no footsteps to point out the way; and this caution is the more necessary as our decision now will be a precedent for future eases similarly circumstanced.
It is a maxim of law, Quod meonveniens est non licibum est; and this maxim is wise and good, when applied to new actions or undecided points. Where it is clear upon principles or judicial decisions that an action or defence may be maintained, the inconvenience will not avail. Here the law cannot be said to be very clear on the part of the plaintiff. The inconveniences of sustaining this' action are many. No prudent man would act in the office of selectman where he must act in every case at his peril; where he must not only judge right on every question of law, but where his judgment must coincide with judges and jurors examining the same point forty years afterwards. _ No tax could be collected. The laws on this subject are very loosely penned ; oftentimes they were not distributed seasonably. Between November, 1777, and January, 1792-, — less than fifteen years, — fifteen acts have been made; five new systems, each different from the other, have been in operation within that period. Gentlemen of the profession will have the candor to acknowledge that they have no small difficulty in construing these laws. Is it reasonable to suppose that selectmen should never err ?
If this action be maintainable, it is not extravagant to say that damages may be recovered, exceeding in amount the property of all the selectmen in the State for the last twenty-five years.[1] Ten thousand actions might instantly be brought; *72 and, if maintainable, purchasers at vendue will have no inducement to compromise with the original proprietors.
It is much more reasonable to say that the purchaser, who may, if he pleases, examine the doings of the selectmen before he purchases, shall judge of them and run all risks, except in those cases where they do wrong wilfully, maliciously, and fraudulently.
It only remains to examine the second question, whether, on the supposition that an action can be maintained against selectmen for defaults like these, the present plaintiff can maintain such action.
Abiah Walker attempted to sell to Zenas Fairbanks the land in question. The land did not pass. Could he sell his remedy against the persons through whose default the land did not pass ? He may enter into covenants with Zenas Fairbanks, which the latter may assign to Levi Harris, the plaintiff. And, for the same reason, he may assign to, Zenas Fairbanks the covenants made with him by the collector. Because the rule of law is that covenants pass with the land. But was it ever heard that an action of the case could be assigned ?
A. sells the horse of a stranger to B., who sells to C. The stranger recovers his horse of C. Can the latter sue A. for the fraud in the sale? No such action was ever brought.
1 Senator, 812, 813. Livesay, Hargrave, & Co. made a bill of exchange payable to John White, a fictitious person, or his order, and caused the name of John White to be indorsed, and the indorsement filled up with an order to pay the contents to them, L., H., & Co., or order. Afterwards L., H., & Co., by their agent, Barber, sold the bill for a full and valuable consideration to Minet & Fector, and indorsed it to them. Gibson & Johnson, on whom the bill was drawn, knowing that there was no such person as John White, accepted. ' Action by Minet & Fector against Gibson & Johnson as acceptors. It was said in the course of the argument that an action might be maintained against L., H., & Co., the drawers, for a fraud, giving the bill the appearance of remedy against John White, which it had not in reality. But Lord Kenyon said that *73 this right of redress could not be transferred. That is, the second indorsee cannot maintain an action for a fraud in the drawer, though drawee and first indorser doubtless might.[1]
Judgment for defendants.[2]

 The Acts, folio ed. 333, 374, H. B. 103, are not material in this action.

 See Bailey v. Ackerman, 1874, 54 N. H. 527.

 But see Smith v. Kimball, 1817, 1 N. H. 72.

 See Revised Laws, ed. 1792, 188, act of Dec. 28, 1791. The act of Dec. 10, 1796, ed. 1797, 452, declares that, if the owner and original proprietor be unknown, then the quantity of the land, the number of the range, and lot, if lotted, — otherwise such description as the land is usually known by —shall be deemed sufficient.

 See Cardigan v. Page, 1833, 6 N. H. 182; Smith v. Messer, 1845, 17 N. H. 420.

 Where the judgment or opinion of an officer is by law to be his guide, he is not answerable, unless for wilful misconduct. 2 Caines, 315.

 All men in office are amenable to the law for every part of their official conduct, and obnoxious to punishment when convicted of not having acted when they ought to act, of not having acted faithfully. Rex v. Bembridge, 5 Pol. Mag. 15; Notanda, 15, 17.

 Compare Waldron v. Berry, 1871, 51 N. H. 136, with Henry v. Sargeant, 1843, 13 N. H. 321, and Walker v. Cochran, 1835, 8 N. H. 166.
See also State v. Smith, 1846, 18 N. H. 91; and instructions to jury in Tyler v. Flanders, 1873-1876, 57 N. H. 618, 620.

 In the absence of a vote to indemnify, a selectman cannot maintain an action against a town to recover indemnity for the consequences of assessing a tax for money voted by the town to be raised for an illegal purpose. Wadsworth v. Henniker, 1857, 35 N. H. 189.

 Minet v. Gibson is also reported in 3 T. R. 481; and in 1 H. Bl. 569.

 In Hamilton v. Valiant, 1868. 30 Md. 139, it is held, that apurchaser at a tax sale, whose title proves invalid in consequence of an omission by the collector, cannot maintain an action against the collector. But see Blackwell on Tax Titles, 444.
A public officer executing a tax deed, with the covenants prescribed by statute, is not personally liable on those covenants, even when the title fails on account of errors in his own proceedings. Stephenson v. Weeks, 1850, 22 N. H. 257. Woods, J., 204, “If an injury be sustained in the case of a collector or a sheriff, in discharging the duties of a collector of taxes, as is alleged in the present case, redress must be sought in some other mode than by force of covenants merely official, and entered into in accordance with, and by force of, a statute, and constituting and intended only as a part of the form of the conveyance prescribed by the legislature to be made in pursuance of a tax sale.”
In Maine and Massachusetts, the purchaser of an invalid tax title cannot maintain an action against the county or town to recover the consideration. Emerson v. County of Washington, 1832, 9 Greenl. 88 (overruling a dictvm in Joy v. County of Oxford, 1824, 3 Greenl. 131, 134) ; Shepley, J., in Treat v. Orono, 1846, 26 Me. 217; Shepley, C. J., in Packard v. New Limerick, 1852, 34 Mo. 266, 269, 270; Lynde v. Melrose, 1865, 10 Allen, 49. See also Campbell, J., in Rice v. Auditor-General, 1874, 30 Mich. 12, 13; Gkegoky, C. J., in City of Indianapolis v. Langsdale, 1868, 29 Ind. 486, 488.
Tn Corbin v. City of Davenport, 1859, 9 Iowa, 239, the purchaser recovered b.aclc the consideration; the tax title having proved invalid, for the reason that the owner had paid the tax before the sale. The liability of the city to refund was admitted; and the only point in dispute related to interest. Whether the action was brought under a statute is not stated. See Code of Iowa, 1851, § 509; Iowa Law's, Revision of 1860, § 785 ; providing that the purchaser shall be held harmless by the county in certain cases.
In Phillips v. City of Hudson, 1864, 31 N. J. L. (2 Yroom) , 143, there had been a tax sale of land for a term of ten thousand years; the money had been paid by the purchaser, and a “ declaration of sale ” delivered to him. The law gave the owner two years to redeem; the purchaser’s term not to commence, nor the purchaser to have right of possession, until after the expiration of the two years. It also provided that the common council should advertise sixty days’ notice of the expiration of the time of redemption. The council neglected to give this notice. Held, that the *74 buyer at the tax sale could recover back the purchase-money. _ (Beasley, C. J., concurred only on the ground “ that, until the advertisement was dhly made, the matter remained in fieri“ The rule of caveat emptor does •not apply until the transaction is complete. ’ ’ p. 165.) See also Dillon, J., in McInerny v. Reed, 1867, 23 Iowa, 410, 416, 417; Paine, J., in Norton v. Supervisors of Rock County, 1861, 13 Wis. 611, 613, 614.
In Gardner v. Mayor of Troy, 1857, 26 Barb. 423, the plaintiff was not a purchaser at the tax sale, but in effect a subsequent purchaser from the city.
The statutes of some States give a remedy to the purchaser of an invalid tax title in certain cases. See Saulters v. Town of Victory, 1862, 35 Vt. 351; Morton v. Shortridge, 1872, 38 Ind. 492; Rice v. Auditor-General, 1874, 30 Mich. 12; Warner v. Supervisors of Outagamie County, 1865, 19 Wis. 611; Rev. Stat. of Ohio, 2 Swan & Critchf. 1472, 1473; Lamborn v. County Commissioners of Dixon, Sup. Ct. U. S. Oct. 1877, cited in 17 Alb. Law Jour. 252, 253.
As to the right of a sub-vendee to sue, see Paine, J., in Norton v. Supervisors of Rode County, ubi sup. 614.